
FILED
MAR 24 2009

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| NORTH STAR MUTUAL INSURANCE COMPANY, a Minnesota Corporation, | * * * * | CIV. 08-4131 MEMORANDUM OPINION AND ORDER RE: |
| Plaintiff, | * * | SUMMARY JUDGMENT |
| vs. | * * | |
| NICHOLAS ANTONIE, | * * | |
| Defendant. | * * | |

After Defendant Nicholas Antonie (Antonie) sought payment of insurance benefits for the fire loss of a hotel located in Mitchell, South Dakota, Plaintiff North Star Mutual Insurance Company (North Star) filed a complaint for Declaratory Judgment against Antonie in South Dakota State Circuit Court. North Star removed the action to Federal Court and counterclaimed for declaratory relief in his favor. Now pending before the Court are North Star's Motion for Summary Judgment (Doc. 9) and Antonie's Cross Motion for Summary Judgment, or in the alternative, Resistance to Summary Judgment (Doc. 16).

## BACKGROUND

North Star issued a commercial property insurance policy to Antonie for the policy period of August 26, 2006, to August 26, 2007. It had issued policies to Antonie in previous periods. The policy in issue covered eight commercial properties which are located in Mitchell, South Dakota. The Stardust Motel was one of those properties. The Commercial Property Conditions of the policy state:

> CONCEALMENT, MISREPRESENTATION OR FRAUD
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

After electricity, gas and water were shut off for nonpayment at the Stardust Motel the South Dakota Department of Health in a Summary License Suspension and Closure Order dated May 8, 2007, closed the Stardust Motel. After an individual named Shawn Squires advised the electrical and gas utility service provider that he had purchased the Stardust Motel utility services were restored. The electrical and gas utility service provider had issued 36 disconnect notices to Antonie since 2000, had disconnect service twice at his properties, and Antonie had an outstanding balance of over $22,000 for services provided to his properties. On June 26, 2007, CorTrust Bank commenced a foreclosure action against Antonie with regard to six of Antonie's properties.

On July 13, 2007, a fire occurred at a vacant apartment building owned by Antonie and insured by North Star. North Star investigated, paid and released this claim. In August of 2007 Antonie verbally advised the South Dakota Department of Health that Shawn Squires was defaulting on his contract to purchase the hotel. Antonie contends that he advised the Department of Health that he owned the Stardust Hotel subject to a contract for deed in favor of an individual named Eleanor Shultz.

On September 23, 2007, a fire occurred at the Stardust Hotel. On that date there were judgments of over $5,000 filed against Antonie in State court. On September 24, 2007, a judgment of over $24,000 was filed against Antonie in State court. On October 3, 2007, Antonie relinquished and the South Dakota Department of Health accepted Antonie's lodging license.

On October 18, 2007, counsel for North Star sent a written notice that pursuant to the policy North Star intended to examine Antonie under oath regarding the claims on the Stardust Motel, the vacant apartment building that had burned on July 13, 2007, and another property with a date of loss of November 17, 2005. The written notice also requested that Antonie bring with him a number of documents. Antonie's previous counsel faxed a letter to North Star's counsel on November 5, 2007,

advising that at the scheduled examination he was "not going to permit questions or examination about any claim that has been settled, paid and released." On November 6, 2007, Antonie was examined under oath at which time he was questioned extensively regarding his personal, business and financial background. In accordance with prior counsel's instructions, Antonie refused to answer questions regarding previously settled, paid and released claims. In addition, Antonie failed to produce much of the documents and information listed in the notice of intent to examine. However, Antonie signed several releases for North Star to receive information but restricted the time frame of the information to the year 2007. Although Antonie testified that his records had been in the fire he subsequently turned over to North Star six file drawers full of business records regarding the Satardust Motel and other properties owned or managed by Antonie, as well as records of debts, assets, litigation and judgments. Antonie, through his current counsel, offered to supplement with any additional information North Star would desire, but North Star declined the offer and contended that Antonie does not get a "do over." The North Star policy contains a cooperation clause which North Star contends was violated by Antonie.

The policy limits with regard to the Stardust Motel are $155,400 for the building, $31,000 for business personal property, and $8,000 for signage. An estimate of the actual cash value loss to the Stardust Motel building is $188,343.92. Antonie had executed a mortgage on behalf of CorTrust Bank for the principal sum of $145,000. As a condition of the mortgage Antonie had acquired a forced policy of insurance from American Modern Home Insurance, with policy limits of $300,000 on the Stardust Motel building. In accordance with its statutory[1] obligation to pay its proportional share of the cost of the loss to the property that was also insured by North Star, American Modern Home Insurance has paid $123,930.29, representing 65.8% of the cash value of the building. The parties are now in agreement that absent a factual dispute as to the actual cash value of the building, the resulting calculation of benefits that could be payable by North Star for the building would be $64,413.63. In the Personal Property Inventory Form Antonie claimed $47,300 as the replacement, repair or restoration cost of the personal property damaged or lost from the fire at the Stardust Motel.

---

[1]S.D.C.L. § 58-10-10(4) provides: "If two or more policies are written upon the same property interest, each insurer shall pay only that proportion of the cost of the loss that the limit of liability under its policy bears to the total amount of insurance covering the loss."

3

In support of its Motion for Summary Judgment North Star has filed an affidavit of counsel which attaches a number of documents including law enforcement reports. The law enforcement reports contain statements from an individual alleging that Antonie made statements to him requesting him to burn a piece of Antonie's property which was the subject of a claim that was investigated, paid and released by North Star before the fire occurred at the Stardust Motel. Antonie contends that the reports are hearsay which would be inadmissible at trial and should be disregarded by the Court when ruling on the parties' motions for summary judgment. FED. R .CIV. P. 56(e) provides: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The Eighth Circuit has observed,"When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir.2005), *quoted in Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir. 2008). The Court will not consider the law enforcement reports because they are inadmissible hearsay. It is undisputed in the summary judgment materials that Antonie has not been charged with any criminal wrongdoing relating to his claim with North Star or in relation to the fire at the Stardust Motel.

## DISCUSSION

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence,

showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988)."Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995) (citations omitted).

<u>Construction of Insurance Policies</u>

Since state law controls the construction of insurance policies when a district court is exercising diversity jurisdiction, South Dakota law will govern this coverage dispute. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 455 (8th Cir.1998). The rights and obligations of parties to an insurance contract are determined by the language of the insurance contract which "must be construed according to the plain meaning of its terms." *Biegler v. American Fam. Mut. Ins. Co.*, 621 N.W.2d 592, 599 (S.D. 2001).

ISSUE I

WHETHER THE INSURANCE CONTRACT IS RETROACTIVELY VOID OR RESCINDED AS A RESULT OF CONCEALMENT, MISREPRESENTATION, OR FRAUD BY ANTONIE?

In addition to the CONCEALMENT, MISREPRESENTATION OR FRAUD provision of the policy which states that the policy is void if an insured, at any time, intentionally conceals or misrepresents a material fact concerning the covered property, the insured's interest in the covered property, or a claim under the policy, North Star also relies on the South Dakota Changes in the Commercial Property Coverage Part of its policy to support its position that the policy should be held to be retroactively void or rescinded. The cancellation provision set forth in the South Dakota Changes states in relevant part:

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 20 days before the effective date of cancellation. After 60 days from the effective date of policy issuance a notice of cancellation may not be issued unless it is based upon at least one of the following reasons as stated in South Dakota law:
> 
> . . .
> 
> (2) Discovery of fraud or material misrepresentation made by or with the knowledge of the Named Insured in obtaining the policy, continuing the policy, or in presenting a claim under the policy;
> (3) Discovery of acts or omissions on the part of the Named Insured which increase

any hazard insured against;

(4) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

(5) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

. . . .

North Star contends that the policy provisions upon which it relies are consistent with South Dakota's rescission statute, S.D.C.L. § 53-11-2.[2]

North Star maintains that Antonie engaged in acts, omissions, and code violations, referenced in the cancellation provision of its policy, which if not concealed or misrepresented would have had a direct effect on North Star's willingness to renew, continue or cancel the coverage before the losses occurred. North Star further maintains that these same alleged concealments and misrepresentations of material facts prevented North Star from completing its investigation in this matter. North Star specifically references the following as concealed or misrepresented facts which would have resulted in cancellation of the policy in advance of the fire losses at either of Antonies properties: Antonie's alleged failure to disclose the disconnect of utilities of insured properties for failure to pay, loss of lodging license, Antonie's failure to disclose or his misrepresentation of the true and claimed owners of the Stardust Motel, and the fact that Antonie's properties were in foreclosure. Although North Star contends that Antonie misrepresented the owner of the property on the application, the application on file, which is dated July 31, 2001, merely shows that Antonie listed "Nicholas Antonie d/b/a Stardust Motel" as the response to "First Named Insured & Other Named Insureds" on North Star's Commercial Insurance Application.

North Star also presented additional evidence comparing a video of a November 6, 2007 walk though of the burned Stardust Motel with Antonie's July 9, 2008 statement of loss, and purporting to show that Antonie made claims for property that was "either not damaged, or not

---

[2]S.D.C.L. § 53-11-2 provides that a party may rescind a contract :
If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

present in the particular room of the motel as he has claimed." North Star asks this Court to declare that no benefits are owing under the policy for the fire at the Stardust Motel because of Antonie's alleged breach of the insurance contract by misrepresenting and concealing material facts relating to risk and to the claims made under the policy.

Antonie contends that he had no contractual or common law duty to disclose post-application occurrences to North Star. Although a party applying for insurance is bound to answer truthfully all questions concerning facts material to the risk, there is generally no duty to disclose where the application makes no specific *inquiries*. See 6 COUCH ON INS. § 84:2 (3d Ed. Updated Dec. 2008). *See also Lodgenet Entertainment Corp. v. American Intern. Specialty Lines Ins. Co.*, 299 F.Supp.2d 987, 995 (D.S.D.,2003)(finding that the Insured made no misrepresentation or omission in its application for renewal of its Policy when neither the renewal application nor the letters containing the premium quotations asked any questions regarding the matter in issue). Also, absent an express agreement to the contrary, the duty to disclose changes in material conditions ceases once the application is approved and a policy issued, and the insured is not required to disclose any information thereafter acquired. See 6 COUCH ON INS. § 82:3 (3d Ed. Updated Dec. 2008).

North Star has not shown any material misrepresentations in the application form. In the absence of showing any evidence that North Star asked for any of the information in issue regarding the covered property and the insured's interest in that property or that a procedure was in effect requiring Antonie to disclose to North Star this information after the policy issued, North Star has failed as a matter of law to demonstrate intentional concealment or misrepresentation of a material fact concerning the covered property and the insured's interest in the covered property which would retroactively void or rescind the policy in issue.

With regard to whether there was an intentional concealment or misrepresentation of a material fact in a claim made under the policy which would retroactively void or rescind the policy in issue, the Court finds there are genuine issues of material fact which would preclude either party from being entitled to summary judgment. Antonie points out that North Star overlooks the fact that while some of the property in the November 6, 2007 video had not burned, Antonie's affidavit establishes a reasonable basis for believing the property was worthless on account of smoke and water damage. Additionally, Antonie has created a genuine issue of fact as to whether any of the

missing personal property could be attributed to looting and/or the fact that the fire department removed items from the rooms during the fire. Since there is evidence that the fire department sprayed water on the building and the interior of the rooms to extinguish the blaze and prevent it from spreading, there is evidence that while some of the rooms did not suffer damage from fire, they were still subject to smoke damage.

North Star did not film the motel until almost a month and one-half after the fire. Since there is evidence that the Stardust Motel was vacant, that the windows and some of the entrances had no more than ply-wood as barriers, and that some of the rooms were not locked during that time, there is a reasonable inference that some of the personal property North Star characterizes as missing, was actually burned, removed by fire department personnel, or stolen. Antonie asserts that the Mitchell Police Department recently opened an investigation on an individual suspected of stripping copper piping from the Stardust Motel. Antonie also points out that the claims investigator apparently shared Antonie's opinion that beds, carpet, and furniture which have have been exposed to debris, water, and heavy smoke have no value based on the claims investigator having stated on the film, "[A] lot of this stuff [personal property] isn't worth trying to clean." The Court concludes that genuine issues of material fact exist as to whether Antonie had a reasonable basis for believing a total loss occurred to the personal property in issue and this precludes North Star from being entitled to summary judgment based on intentional concealment or misrepresentation of a material fact in Antonie's submitted claim.

## ISSUE II

### WHETHER ANTONIE'S CLAIMS ARE VOID AS A RESULT OF HIS BREACH OF THE POLICY'S COOPERATION CLAUSE?

The North Star Policy's Cooperation Clause, which provides that the insured must cooperate in the investigation or settlement of a claim, specifically provides:

> We may examine any insured under oath . . . at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. . . .

The violations of such cooperation provisions in an insurance policy may cause the insured to forfeit his rights under the policy. *See Murphy v. Hopkins*, 68 S.D. 494, 4 N.W.2d 801 (1942). However,

an insurer must use reasonable diligence in obtaining cooperation from insured before it may allege the breach of cooperation clause as a defense to its liability under a policy. *See Carter v. Aetna Cas. & Sur. Co.*, 473 F.2d 1071, 1077 (8th Cir. 1973);*Lodgenet Entertainment Corp. v. American Intern.*, 299 F.Supp.2d at 995. Whether an insured has violated a cooperation clause is generally a question of fact, and the insurer has the burden of proving the insured's lack of cooperation. *See* RICHARD A. LORD,16 WILLISTON ON CONTRACTS § 49:107 (4th ed. Database updated October 2008).

North Star maintains that Antonie's failure to produce the information demanded in the Notice of Intent to Examine Under Oath, Antonie's refusal to answer questions regarding his debts and assets, and Antonie's failure to disclose the status of his properties "prevented North Star from conducting a thorough investigation to rule out arson by the insured as a defense to the claims" for both the burned properties. Antonie contends that there was no material breach and North Star has not been prejudiced by any alleged breach given the documents that were presented to North Star, the admission in its briefing that it is still examining those documents, and because new counsel offered to provide further documentation.

In addition, this Court finds that is has not been established as a matter of law that in following the advice of his previous counsel Antonie was preventing North Star from receiving information "relating to this insurance or the claim" as is required under the Cooperation Clause in issue. The Court concludes that the issue of whether Antonie violated the cooperation clause so as to forfeit his rights under the policy involves questions of fact which precludes summary judgment on the matter. Accordingly,

IT IS ORDERED:

1. That North Star is entitled to summary judgment on the issue of the limit of coverage on the building since both parties agree that the limit of coverage on the building is $64,413.63;

2. That North Star is not entitled to summary judgment on the issue of whether pre-loss intentional concealment or misrepresentation of a material fact concerning the covered property and the insured's interest in the covered property exists which would retroactively void or rescind the policy in issue, and Antonie is entitled to summary judgment on this issue;

3. That neither North Star nor Antonie is entitled to summary judgment with regard to whether there was a post-loss intentional concealment or misrepresentation of a material fact in the claim submitted by Antonie which would retroactively void or rescind the policy; and

4. That neither North Star nor Antonie is entitled to summary judgment with regard to whether Antonie violated the cooperation clause so as to forfeit his rights under the policy.

Dated this 24th day of March, 2009

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Simma Walker
   (SEAL)      DEPUTY